UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

AARON SALTER                                             CIVIL ACTION

VERSUS                                                   NO. 18-5858

DARREL VANNOY, WARDEN                                    SECTION: "H"(3)

## REPORT AND RECOMMENDATION

Petitioner, Aaron Salter, a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana, filed the instant federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. For the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

On July 15, 2011, petitioner was convicted of aggravated burglary under Louisiana law.[1] On October 10, 2011, he was found to be a fourth offender and was sentenced as such to a term of life imprisonment without benefit of probation, parole, or suspension of sentence.[2] On September 21, 2012, the Louisiana First Circuit Court of Appeal affirmed his conviction, habitual offender adjudication, and sentence.[3] The Louisiana Supreme Court then denied his related writ application on May 3, 2013.[4]

---

[1] State Rec., Vol. 3 of 8, transcript of July 15, 2011, p. 678; State Rec., Vol. 1 of 8, minute entry dated July 15, 2011; State Rec., Vol. 1 of 8, jury verdict form.
[2] State Rec., Vol. 3 of 8, transcript of October 10, 2011; State Rec., Vol. 1 of 8, minute entry dated October 10, 2011; State Rec., Vol. 1 of 8, Written Reasons dated October 12, 2011.
[3] State v. Salter, No. 2011 KA 2330, 2012 WL 4335430 (La. App. 1st Cir. Sept. 21, 2012); State Rec., Vol. 4 of 8. The Court of Appeal also subsequently denied petitioner's application for rehearing. State v. Salter, No. 2011 KA 2330 (La. App. 1st Cir. Oct. 25, 2012); State Rec., Vol. 5 of 8.
[4] State v. Salter, 113 So.3d 209 (La. 2013); State Rec., Vol. 4 of 8.

On September 9, 2013, petitioner filed an application for post-conviction relief with the state district court.[5] That application was denied on September 23, 2013.[6] His related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal on February 27, 2014,[7] and by the Louisiana Supreme Court on December 8, 2014.[8]

On April 20, 2015, petitioner filed a federal application seeking habeas corpus relief. On August 18, 2015, the undersigned issued a report recommending that the application be dismissed without prejudice because it was a mixed petition asserting both exhausted and unexhausted claims.[9] On September 4, 2015, the United States District Judge adopted that recommendation and dismissed the application without prejudice.[10] On October 5, 2016, the United States Fifth Circuit Court of Appeals denied petitioner's motion for a certificate of appealability.[11]

In the interim, on August 25, 2015, petitioner had filed with the Louisiana Supreme Court another writ application seeking review of the Louisiana First Circuit Court of Appeal's 2012 direct-review judgment.[12] On March 14, 2016, the Louisiana Supreme Court refused to consider that application on the grounds that it was untimely.[13]

---

[5] State Rec., Vol. 4 of 8. Federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006). Because that date cannot be gleaned with certainty from the state court record with respect to the *pro se* filings in this case, this Court will simply use the signature date of the applications as the filing date, in that the applications were obviously placed in the mail no earlier than the date they were signed.
[6] State Rec., Vol. 4 of 8, Order with Reasons dated September 23, 2013.
[7] State v. Salter, No. 2013 KW 1798 (La. App. 1st Cir. Feb. 27, 2014); State Rec., Vol. 4 of 8.
[8] State ex rel. Salter v. State, 153 So.3d 432 (La. 2014); State Rec., Vol. 4 of 8.
[9] Salter v. Cain, Civ. Action No. 15-1298 (E.D. La. Aug. 18, 2015).
[10] Salter v. Cain, Civ. Action No. 15-1298 (E.D. La. Sept. 4, 2015). After the Report and Recommendation was issued, petitioner filed two motions asking that the federal proceedings be stayed while he attempted to exhaust his unexhausted claim in state court; however, the District Judge denied those motions.
[11] Salter v. Vannoy, No. 15-30924 (5th Cir. Oct. 5, 2016).
[12] Supplemental State Rec., Vol. 1 of 1.
[13] State ex rel. Salter v. State, 188 So.3d 1069 (La. 2016); Supplemental State Rec., Vol. 1 of 1.

On November 10, 2016, petitioner then filed a motion to amend his prior federal application to omit his unexhausted claim. On May 15, 2018, the United States District Judge denied that motion.[14]

On or after June 12, 2018, petitioner filed the instant federal application.[15] The state filed a response arguing that the application should be dismissed as untimely.[16] The state is correct.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his underlying state criminal judgment becomes "final." 28 U.S.C. § 2244(d)(1)(A).[17] On that point, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

As noted, the Louisiana Supreme Court denied petitioner's writ application on direct review on May 3, 2013.[18] Accordingly, his state criminal judgment became final for AEDPA

---

[14] Salter v. Cain, Civ. Action No. 15-1298 (E.D. La. May 5, 2018).
[15] Rec. Doc. 3. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Petitioner signed his application on June 12, 2018, see Rec. Doc. 3, p. 6; therefore, it could not have been delivered to prison authorities any earlier than that date.
[16] Rec. Doc. 12.
[17] Although 28 U.S.C. § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, petitioner does not argue that those alternative provisions are applicable in the instant case.
[18] State v. Salter, 113 So.3d 209 (La. 2013); State Rec., Vol. 4 of 8.

purposes, and his federal limitations period therefore commenced, on August 1, 2013. The federal limitations period then expired one year later, unless that deadline was extended through tolling.

The Court first considers statutory tolling. Regarding the statute of limitations, the AEDPA expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

After thirty-eight (38) days elapsed, petitioner tolled his federal limitations period by filing a post-conviction application with the state district court on September 9, 2013. Tolling then continued uninterrupted for the duration of the post-conviction proceedings, so long as he sought supervisory review in a timely manner. Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-71 (5th Cir. 2004). Assuming for the purposes of this decision that petitioner's related writ applications were timely filed,[19] the undersigned finds that tolling therefore continued until the Louisiana Supreme Court denied relief on collateral review on December 8, 2014.[20]

When petitioner's federal limitations period resumed at that point, he had three hundred twenty-seven (327) days remaining. Accordingly, he had until November 2, 2015,[21] either to again toll the federal limitations period or to file his federal application.

---

[19] The state does not argue that the applications were untimely.

[20] State ex rel. Salter v. State, 153 So.3d 432 (La. 2014); State Rec., Vol. 4 of 8. A petitioner receives no additional tolling credit for the period during which he could have sought review by the United States Supreme Court with respect to the denial of post-conviction relief. Lawrence v. Florida, 549 U.S. 327, 332 (2007); Ott v. Johnson, 192 F.3d 510, 512-13 (5th Cir. 1999).

[21] Because the three-hundred-twenty-seventh day fell on a Saturday, the federal limitations period was extended through the following Monday, November 2, 2015. See Flanagan v. Johnson, 154 F.3d 196, 202 (5th Cir. 1998) ("We hold that [Fed. R. Civ. P.] 6(a) applies to the computation of the one year limitation period in § 2244(d) of AEDPA."); Fed. R. Civ. P. 6(a) (if the last day of an applicable period is a Saturday, a Sunday, a legal holiday, or a day when the clerk's office is inaccessible, the period runs until the end of the next day that is not one of those days).

Petitioner filed no other applications for "State post-conviction or other collateral review" on or before November 2, 2015.  The only other state application he filed during that period was the writ application he filed with the Louisiana Supreme Court on August 25, 2015, in which he sought further *direct review* of the Louisiana First Circuit Court of Appeal's 2012 direct-review judgment.  However, the Louisiana Supreme Court expressly refused to consider that writ application on the basis that it was untimely filed.[22]  The United States Fifth Circuit Court of Appeals has clearly held that a petitioner is not entitled to any tolling credit under § 2244(d)(2) for an untimely *direct-review* filing.  Butler v. Cain, 533 F.3d 314, 320 (5th Cir. 2008) ("Filings that are not part of habeas or post-conviction proceedings do not invoke Section 2244(d)(2) tolling."); accord Allen v. Tanner, Civ. Action Nos. 11-927 and 11-1601, 2011 WL 4344586, at *2 (E.D. La. Aug. 19, 2011), adopted, 2011 WL 4345081 (E.D. La. Sept. 15, 2011).  Therefore, he clearly is not entitled to further statutory tolling pursuant to 28 U.S.C. § 2244(d)(2).[23]

The Court must next consider equitable tolling.  The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling.  Holland v. Florida, 560 U.S. 631, 645 (2010).  However, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  Id. at 649 (internal quotation marks

---

[22] State *ex rel.* Salter v. State, 188 So.3d 1069 (La. 2016) ("WRIT NOT CONSIDERED.  Untimely filed pursuant to La.S.Ct. Rule X § 5. Relator may be entitled to seek post-conviction relief pursuant to La.C.Cr.P. art. 924 et seq."); Supplemental State Rec., Vol. 1 of 1.

[23] The Court is, of course, aware that petitioner's first federal application was filed during that period.  However, the United States Supreme Court has expressly and conclusively held that a petitioner is not entitled to any statutory tolling credit under § 2244(d)(2) for a *federal* application.  Duncan v. Walker, 533 U.S. 167, 181-82 (2001) ("We hold that an application for federal habeas corpus review is not an 'application for State post-conviction or other collateral review' within the meaning of 28 U.S.C. § 2244(d)(2).  Section 2244(d)(2) therefore did not toll the limitation period during the pendency of [the prisoner]'s first federal habeas petition.").

omitted); accord Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances").  A petitioner bears the burden of proof to establish entitlement to equitable tolling.  Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002).  In the instant case, petitioner has brought forth no evidence demonstrating that he is entitled to such tolling, and this Court knows of no reason that would support equitable tolling of the statute of limitations.

Because (1) petitioner is not entitled to further statutory tolling, (2) he has not established that he is eligible for equitable tolling, and (3) this federal application was not filed or before the federal limitations period expired on November 2, 2015, the merits of the application may be considered by this Court only if petitioner overcomes the limitations bar by proving that he is actually innocent pursuant to McQuiggin v. Perkins, 569 U.S. 383 (2013).

In that case, the United States Supreme Court held:  "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or, as in this case, expiration of the statute of limitations."  Id. at 386.  Here, petitioner does not invoke McQuiggin.  However, in the event he does so in any objections to this Report and Recommendation, the undersigned finds that petitioner has not made the showing required under McQuiggin for the following reasons.

In McQuiggin, the Supreme Court expressly cautioned:  "[T]enable actual-innocence gateway pleas are rare:  '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  Id. (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).  Further, as the United States Sixth Circuit Court of Appeals has explained:

6

> To assess that question, a court must survey "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." House v. Bell, 547 U.S. 518, 538, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006) (internal quotation marks omitted). With "all the evidence" thus in mind, the court's final task is "to assess the likely impact of the evidence on reasonable jurors"; it is not to work through an "independent factual determination" to divine "what likely occurred." Id. (internal quotation marks omitted).

Eberle v. Warden, Mansfield Correctional Institution, 532 Fed. App'x 605, 613 (6th Cir. 2013); accord Nordgren v. McCain, Civ. Action No, 18-072, 2018 WL 2187388, at *3 (E.D. La. Apr. 5, 2018), adopted, 2018 WL 2183830 (E.D. La. May 11, 2018); Johnson v. Cain, Civ. Action No. 14-543, 2015 WL 4528889, at *2-3 (E.D. La. July 27, 2015), aff'd, 667 Fed. App'x 474 (5th Cir. 2016), cert. denied, 137 S. Ct. 1105 (2017); Lyles v. Tanner, Civ. Action No. 13-655, 2014 WL 4674673, at *6 (E.D. La. Sept. 17, 2014).

A logical starting point, therefore, is to look at the "old" evidence, i.e. the evidence existing and known at the time of petitioner's trial. That evidence was recounted in the Louisiana First Circuit Court of Appeal's summary of the facts of this case on direct appeal:

> Lori Lee Turner testified at trial. She was sixty-seven years old. She conceded she had used cocaine in the past. Following Hurricane Katrina, she began living in a FEMA trailer on U.S. Highway 190 in Slidell. She had known the defendant for many years because he grew up with her children and nephews.
> On August 26, 2007, the defendant knocked at Turner's door. Turner opened the door and saw the defendant had a white female, later identified as J.B.,[FN 2] with him, whom she had never seen before. The defendant wanted to smoke crack cocaine in Turner's trailer. Turner told the defendant he could not stay in her trailer. The defendant stated he and J.B. did not have any more money for a hotel. Turner told them they could park by her trailer and sleep in the defendant's car. The defendant and J.B. went to the defendant's car, and Turner locked her door and went to bed.
>
>> [FN 2] We reference this victim only by her initials. See LSA-R.S. 46:1844(W).

7

   Subsequently, J.B. knocked at Turner's door and asked to use the bathroom. Turner let J.B. in and locked the door. Turner saw bruises on J.B.'s arm, neck, and back. J.B. was "very upset, crying and shaking." She stated the defendant had "kidnapped her for three days," had forced her to have sex with him, had beaten her, and had been "making her trick." J.B. claimed that if she did not bring the defendant drugs or money, he would beat her. J.B. stated, "I can't go back out there. I am scared." Turner told J.B. that she would not let her go back outside, and that the defendant "wasn't coming inside." Turner placed a hammer, which she kept in her trailer for protection, in her lap. Thereafter, the defendant began beating and pulling on Turner's door "like a madman." He pulled the door open, and Turner struck him with her hammer. The defendant pushed Turner aside, grabbed J.B. by her hair, and pulled her out of the trailer. Turner called out to her neighbors for help, and three neighbors responded. They pulled J.B. away from the defendant and began beating him. The defendant ran to his vehicle and fled from the scene. J.B. was taken to the hospital. She did not testify at trial.[24]

The foregoing "old" evidence was obviously compelling proof of petitioner's guilt of the crime of aggravated burglary as it was defined in Louisiana law at the time of the offense.[25] Therefore, he would face a daunting burden to present a credible "actual innocence" claim. Specifically, the United States Supreme Court has explained: "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence –

---

[24] State v. Salter, No. 2011 KA 2330, 2012 WL 4335430, at *1 (La. App. 1st Cir. Sept. 21, 2012); State Rec., Vol. 4 of 8.

[25] As the Louisiana First Circuit Court of Appeal explained on direct review:

   Aggravated burglary is the "unauthorized entering of any inhabited dwelling ... where a person is present, with the intent to commit a felony or any theft therein, if the offender, ....(3) [c]ommits a battery upon any person while in such place, or in entering or leaving such place." LSA-R.S. 14:60.
   Simple kidnapping, a felony, is the intentional and forcible seizing and carrying of any person from one place to another without her consent. LSA-R.S. 14:45(A)(1). Under the statute, the distance traversed is immaterial. Nor is it necessary to specify the place to which the victim was carried. State v. Bertrand, 247 La. 232, 170 So.2d 386, 388 (La. 1964), cert. denied, 382 U.S. 960, 86 S.Ct. 442, 15 L.Ed.2d 364 (1965).
   … [T]he defendant's intentional and forcible seizing and dragging of J.B. from the trailer without her consent completed the offense of simple kidnapping and also satisfied the "intent to commit a felony ... therein" element of the offense of aggravated burglary.

State v. Salter, No. 2011 KA 2330, 2012 WL 4335430, at *2 (La. App. 1st Cir. Sept. 21, 2012); State Rec., Vol. 4 of 8.

8

*whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence* – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup v. Delo, 513 U.S. 298, 324 (1995) (emphasis added). Here, petitioner presents no new evidence of the type or caliber referenced in Schlup. Therefore, he has not met "the threshold requirement" for McQuiggin to apply, i.e. a showing that "in light of the *new* evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" McQuiggin, 569 U.S. at 386 (quoting Schlup, 513 U.S. at 329; emphasis added). Accordingly, McQuiggin does not aid him.

In light of the foregoing, the instant federal application for habeas corpus relief had to be filed no later than November 2, 2015, in order to be timely. Because it was not filed until on or after June 12, 2018, it is untimely.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Aaron Salter be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

9

result from a failure to object. 28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[26]

New Orleans, Louisiana, this second day of November, 2018.

*Daniel E. Knowles, III*
**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[26] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.